A. V. Coco, Atty. Gen. (Conrad A. Buchler, Dist. Atty., of Gretna, and T. S. Walmsley, of New Orleans, of counsel), for the State.

By the WHOLE COURT.

ST. PAUL, J. In each of these cases defendant was convicted of assault and battery, a misdemeanor under section 2 of Act 107 of 1902, and sentenced to pay a fine of $100 and suffer imprisonment in the parish jail for three months, with three months additional if the fine be not paid. He appeals to this court.

As in each case the fine does not exceed $300 and the imprisonment does not exceed six months, it is clear that this court is without jurisdiction in either case. Const. 1921, art. 7, § 10.

Decree.

The appeals herein taken are therefore dismissed.

═══════

(95 South. 211)

No. 25444.

STATE v. ORR.

(Dec. 29, 1922. Rehearing Denied Jan. 27, 1923.)

(Syllabus by Editorial Staff.)

1. Counties ⊙⟲55—Parishes; referendum on ordinance of police jury, prohibiting stock from being at large, unauthorized.

Under Rev. St. § 2743, subd. 5, as amended and re-enacted by Act No. 202 of 1902, authorizing police juries to determine what animals shall not be suffered to rove at large. etc., the submission of an ordinance prohibiting stock from running at large to the electors for approval or rejection is neither required nor authorized.

2. Counties ⊙⟲55—Parishes; unauthorized submission of ordinance to electors did not annul it.

The action of the police jury in submitting an ordinance prohibiting stock from running at large to the voters, in an effort to ascertain their views as to whether such an ordinance would meet with their approval, though un- authorized, did not nullify such ordinance as afterwards adopted by the police jury.

3. Counties ⊙⟲55—Parishes; not assumed that police jury adopted ordinance merely because of unauthorized vote of electors.

In the absence of anything on the face of an ordinance justifying such inference, it cannot be presumed that the police jury would not have passed it except for the result of an unauthorized referendum, and the question whether members of the police jury voted therefor because of the result of the referendum cannot be inquired into for the purpose of annulling the ordinance.

4. Counties ⊙⟲55—Parishes; ordinance prohibiting stock from running at large not nullified by partial invalidity.

Assuming that an ordinance of a police jury prohibiting stock from running at large must be interpreted as including within its scope the territory within a city, and that it is illegal to that extent, it is not thereby invalidated as to the territory over which the police jury had power to legislate, where the valid part is not dependent on the invalid part, and the two are not so interwoven that the one cannot legally exist without the other.

5. Animals ⊙⟲49—Ordinance prohibiting running at large need not except marsh and swamp lands.

Under Rev. St. § 2743, subd. 5, as amended and re-enacted by Act No. 202 of 1902, authorizing police juries to legislate concerning the running of animals at large, an ordinance, prohibiting stock from being allowed to run at large, was not ultra vires because it did not except marsh, swamp, and other lands fit only for pasturage or the growing of trees.

6. Animals ⊙⟲49—Ordinance prohibiting running at large not unreasonable because not excepting waste land.

Under Rev. St. § 2743, subd. 5, as amended and re-enacted by Act No. 202 of 1902, as the power of a police jury to include all land within the parish in an ordinance forbidding stock from running at large is expressly conferred, the ordinance cannot be attacked as unreasonable, though a large proportion of the land in the parish is not devoted to agriculture, but lies waste.

7. Counties ⊙⟲55—Parishes; stock ordinance not invalidated by separable, unconstitutional, or ultra vires provisions.

Assuming that an ordinance of a police jury prohibiting stock from running at large

violates Const. U. S. Amend. 5, and Const. La. 1921, art. 1, § 2, or is ultra vires so far as it provides for the seizure and sale of stock found running at large, and imposes duties on the sheriff not imposed by the Legislature, such unconstitutional or ultra vires provisions do not affect the whole ordinance, and one merely fined and ordered imprisoned in default of payment of the fine and costs cannot question its validity in the respects mentioned.

### 8. Counties ⚖══55—Parishes; ordinance interpreted as if word omitted when it would defeat clear intention.

An ordinance of a police jury, making it unlawful for stock to run, roam, or be at large, "or" on a public highway or common, or on any land other than that of the owner, will be interpreted as if the quoted word had been omitted, and not as prohibiting animals from being driven on the highway, which would defeat the clear intention of the police jury.

### 9. Animals ⚖══49—Ordinance prohibiting running at large not inconsistent.

An ordinance of a police jury, prohibiting stock from running at large, is not illegal as inconsistent and conflicting in its terms, because it also provides that after it becomes effective no fence shall be required in the parish.

### 10. Animals ⚖══49—Ordinance prohibiting running at large not discriminatory.

No one has such a right to suffer his stock to roam at large that the right cannot be taken away from him by the state, or, with the state's authorization, by one of its political subdivisions, and an ordinance prohibiting stock from roving at large does not discriminate against cattle owners.

Appeal from Twenty-Second Judicial District Court, Parish of East Baton Rouge; H. F. Brunot, Judge.

Robert Orr was convicted of violating an ordinance of the police jury, and he appeals. Affirmed.

J. H. Pugh, of Plaquemine, for appellant.

A. V. Coco, Atty. Gen., John Fred Odom, Dist. Atty., of Baton Rouge (T. S. Walmsley, of New Orleans, of counsel), for the state.

By the WHOLE COURT.

OVERTON, J. Defendant was charged, by bill of information, with having permitted his cattle, consisting of one or more head, to run or be at large on land other than the land of defendant, in violation of an ordinance of the police jury of the parish of East Baton Rouge, entitled:

"An ordinance to be known as the No Fence Ordinance, prohibiting horses, mules, cattle, hogs, sheep or goats from running, roaming or being at large, or on any of the public highways or commons, or on any private land other than that of the owner of such animals, in the parish of East Baton Rouge, prescribing penalties for the violation of this ordinance, and the method of procedure in such cases, and repealing all ordinances in conflict herewith."

A motion to quash the bill of information, which charged the above offense, having been filed and overruled, defendant was tried and found guilty. He then filed a motion in arrest of judgment. This was overruled. He was then sentenced to pay a fine of $25, and, in default of paying the fine and costs, to imprisonment in the parish jail. He has appealed from this sentence, and rests his hopes of obtaining a reversal on the motion to quash.

The first ground in the motion to quash is that the ordinance, on which the prosecution is based, is null and void, because it was not legally passed or published as required by law. This ground is fully developed in defendant's brief, and from that source it appears that the contention is that the ordinance is based on a referendum; that the referendum submitted the question of the adoption or rejection of the ordinance to the qualified electors of the parish, including those of the city of Baton Rouge; that the latter were without right to vote thereon; and that it is necessary to count their votes to give the ordinance the required majority. From defendant's brief we also learn that, as the police jury submitted the question to the electors, reference should have been made to the election and the result thereof, in promulgating the ordinance, and, as no

such reference was made, there was no legal promulgation.

The ordinance on its face does not mention the election. However, it appears from the minutes of the police jury that prior to its passage, the ordinance was submitted by that body to the qualified electors of the parish for acceptance or rejection. After the election was held, it also appears that the police jury, at a session held on October 11, 1921, canvassed the returns, and declared that there was a majority of 41 votes in favor of the ordinance. At the same session, it appears that Mr. Hart, a member of the police jury, moved that the ordinance be adopted, and his motion was seconded by Mr. Mayer, another member of that body. The yeas and nays were then called, and the result showed its unanimous adoption.

Defendant, in urging the grounds now under consideration, apparently assumes that, when the ordinance was submitted, there was some law of the state which authorized or required its submission to the electors.

The ordinance was passed pursuant to the provisions of Act No. 202 of 1902. This act amends and re-enacts section 2743 of the Revised Statutes, which defines the powers of police juries. The power to enact ordinances relative to the roving of cattle, etc., is found in the fifth subdivision of powers delegated by that act to police juries, and reads, in so far as it is necessary to quote that subdivision, as follows:

"To pass all ordinances and regulations which they shall deem necessary in relation to the marking the sale destruction (sic.) of cattle in general and especially of wild cattle which are not marked; and also of horses and mules; and to take any measure concerning the police of cattle in general in all the cases not provided for by law; to fix the time in which cattle may be suffered to rove in the parishes of this state, where that custom prevails, so that such roving may not be detrimental to the crops; to determine what animals shall not be suffered to rove, and in what cases they may lawfully be killed."

[1] The power here delegated is vested in police juries alone, and not in them and in the qualified electors. There is nothing in the act which even vests police juries, if they see proper, with the power to submit such an ordinance to the electors for approval or rejection, nor do we find any provision in any other law of the state, nor are we referred to any, that required or authorized such submission. We, therefore, hold that there was none, and since there was none, it cannot be said that the ordinance should have been submitted to the electors of the parish, excluding those of the city of Baton Rouge. All that may be said is that there was no law authorizing the submission of the ordinance at all.

[2] It might be argued, however, under the motion to quash, that the ordinance is illegal because the police jury, without authority, submitted it to the electors. If the submission of the ordinance to them was equivalent to a delegation of a part of the legislative power vested by the Legislature in the police jury, then, doubtless, such a delegation being unauthorized, the ordinance, under well-established principles, would be held to be null and void, but we do not think that the action of the police jury may be so viewed, for it amounted to nothing more than an effort to ascertain the views of the electors, to whom the ordinance was submitted, as to whether, if such an ordinance were adopted, it would meet with their approval. Action by a police jury, though unauthorized, carrying with it nothing more than that, cannot be given the effect of annulling legislation.

[3] It may be said, however, that, had the police jury not submitted the question of approval or disapproval to the electors, they would not have passed the ordinance. We cannot presume that they would not have done so. There is nothing on the face of the ordinance that justifies such an inference. Such

being the case, the question as to whether the members of that body were moved to vote for the ordinance, when it was before them for passage, because a majority of the electors of the parish, including those of the city of Baton Rouge, had voted in favor of it, is one that would have to be determined outside of the ordinance, and hence is one that cannot be inquired into for the purpose of annulling it. Villavaso v. Barthet, 39 La. Ann. 247, 1 South. 599; State ex rel. Blaise v. New Orleans, 142 La. 73, 76 South. 244; Soon Hing v. Crowley, 113 U. S. 703, 5 Sup. Ct. 730, 28 L. Ed. 1145; McQuillin, Municipal Corporations, vol. 2, § 703, p. 1527.

[4] It is next urged that the ordinance is ultra vires, and therefore illegal. This contention, as appears from defendant's brief, is directed in part against the ordinance on the ground that it does not except from its operation the city of Baton Rouge, a municipal corporation in the parish that adopted it. Defendant's position, in this respect, is that the legislative power of the police jury does not extend over the territory contained within the boundaries of the city, and that, as the ordinance includes that territory, which by the creation of the municipality was withdrawn from the exercise of such power by the police jury, the ordinance is null and void. There is no contention that, if the ordinance is invalid as to the city, but valid as to the rest of the parish, this would result in the discharge of the defendant. The contention is that, if it is illegal in the respect named, then it is illegal in its entirety.

In our view, it is unnecessary to determine the validity of the ordinance in respect to the territory comprised within the boundaries of the city. For the purposes of this case, it may be assumed that the ordinance must be interpreted as including within its scope that territory, when it should not have included it, and is therefore illegal to that extent, but, because it is illegal to that extent, it does not follow that it is invalid as a whole. If the illegal part were eliminated, there would still remain a complete ordinance in respect to the territory over which the police jury possessed power to legislate. The valid part is not dependent on the invalid part, nor is it so interwoven with it that the former cannot legally exist without the latter. Under such circumstances, the ordinance will not be declared illegal as a whole. Villavaso v. Barthet, cited supra. State v. Coco, 152 La. 241, 92 South. 883.

[5] It is further contended that the police jury exceeded its power, and that the ordinance itself is unreasonable, in not excepting from its provisions, marsh, swamp, and other lands fit only for pasturage or the growing of trees. The contention is that, as these lands are not suitable for agriculture, the power of the police jury to regulate and prohibit the roving of cattle, etc., has no application in respect to them, and therefore that the ordinance is illegal, because it does not exclude them.

Defendant, in support of his contention, cites Miller v. Bopp, 136 La. 788, 67 South. 831. In that case, the court, in passing on Act 102 of 1902, in so far as the act confers power on police juries, in respect to the roving of animals, which part is quoted above, said that, as the main object the Legislature had in view was the protection of crops—

"it is manifest that the statute was never intended to apply to sections composed of marsh, swamp, or other lands, fit only for pasturage or the growing of trees."

The question as to whether lands of that description should be excepted from such an ordinance does not appear to have been an issue in the case. The issue was whether the police jury of the parish of Webster, acting under the Act of 1902, had authority to pass an ordinance, prohibiting the roving of domestic animals, which, instead of being made to apply to the entire parish, was con-

fined to one ward thereof. The court properly held that the Legislature had wisely vested police juries with the discretion of determining from local conditions to what extent stock should be permitted to roam, but this ruling was not dependent upon the statement made, in the opinion, that police juries were without right to make the ordinance applicable to the roving of stock in marshes, swamps and on other lands, not suitable for agriculture. The court did not find, and certainly did not mean to hold, that the only ward in Webster parish suitable for the planting of crops was the ward to which the ordinance was made to apply. We, therefore, regard the statement merely as obiter dictum.

As a matter of fact, in many instances, to say the least, ordinances prohibiting the roving of stock, which except swamps, marshes, and other lands, suitable only for pasturage and the growing of trees, would be thereby so weakened as to greatly impair their value. The Legislature did not intend to delegate, and in fact did not delegate, power so weak as to require such lands to be excepted. The tenor of the act conferring the power is distinctly against the roving of stock. Nowhere in it is there any intention to require that police juries, in exercising the power conferred, should except lands of a certain character from the prohibitory provisions of their ordinances. In those parishes, in which the custom prevails of permitting cattle to rove, authority is given to fix the time in which they may rove, so that their roving will not be injurious to the crops; and still further power is given to determine what animals shall not be permitted to rove, which authorizes police juries to prohibit the running at large of all domestic animals throughout the year, including cattle, not merely on lands of a certain character, but on all lands throughout the jurisdiction of the police jury enacting the ordinance. We are there-

fore clearly of the opinion that the police jury of East Baton Rouge parish did not exceed its powers in not excepting from the prohibitory provisions of the ordinance lands of the character that defendant contends should have been excepted.

[6] Defendant, however, contends, as we have seen, that the ordinance is unreasonable in not excepting from its provisions lands of the character mentioned in the paragraphs immediately preceding the present, and, though he does not say so in so many words, yet we infer that his contention is that the ordinance is ultra vires for that reason also. He bases his contention of unreasonableness on the alleged ground that a large proportion of the lands in the parish are not devoted to agriculture, but are lying waste. In so far, however, as respects the right of the police jury to include, in such an ordinance, all lands within the parish, the power conferred by the Legislature may be considered as express. When the power conferred is express and the ordinance is passed in pursuance thereof, the ordinance will be deemed reasonable, and is not susceptible of attack on the ground that it is unreasonable. If the ordinance is invalid under such circumstances it is because the power conferred is unconstitutional. State v. Payssan, 47 La. Ann. 1029, 17 South. 481, 49 Am. St. Rep. 390; McQuillin, Municipal Corporations, vol. 2, § 724, p. 1570. However, were we to determine the reasonableness of the ordinance from the evidence offered in that connection, our conclusion would not be that it is unreasonable.

[7] Defendant also contends that the ordinance is unconstitutional, because it deprives him of his property without due process of law, in violation of section 2 of article 1 of the Constitution of Louisiana, and of the Fifth Amendment to the Constitution of the United States. In discussing this ground in his brief, defendant refers to his argument

in support of the fourth objection urged to the ordinance. We may therefore consider the fourth objection in connection with the present one.

The fourth objection is that the police jury exceeded its power, in imposing by sections 2, 3, 4, and 5 of the ordinance, penalties greater than those authorized by the Legislature. More specifically stated, as appears from the argument, the contention is that the Legislature has, by Act 315 of 1908, authorized police juries to enforce their ordinances by fine or imprisonment, or both, the prosecution to be by bill of indictment or information, or the fine or forfeiture to be collected by civil process before a competent court; that, not content with this power, the police jury, in violation of both the state and federal Constitutions, has gone further, and has authorized private citizens to seize stock found roving in violation of the ordinance, and has required the sheriff to sell such stock, at public auction, without any process of court, to defray the expenses of the seizure, of the keeping, and of the sale of the stock seized.

Sections 2 and 3 of the ordinance provide the penalty of fine or imprisonment, or both, for its violation. Section 4 goes further, and authorizes any resident of the parish to seize stock found roving in contravention of the ordinance, and requires the person making the seizure to notify the owner. It also provides that, if the owner does not come forward and pay the costs attendant upon the seizure within a fixed time, the person making the seizure shall then notify the sheriff or constable of the failure of the owner to pay, and that the sheriff or constable, as the case may be, shall then sell the stock seized, at public auction, after 10 days' notice, in the official journal, to defray the costs attendant upon the seizure and sale, and that the sheriff or constable, after paying the costs, shall pay the balance of the fund derived from the sale to the owner.

It is clear that, if the provisions of the ordinance, relative to the seizure and sale, are unconstitutional or ultra vires, they are easily separable from the rest of the ordinance, and that their unconstitutionality or illegality would not affect what remains of it. There is no contention that defendant's stock has been seized, or that it has been seized and sold, nor does the record disclose anything of the kind. It merely discloses that defendant has been proceeded against by bill of information, tried, convicted, and sentenced to pay a small fine, and, in default of paying it and the costs, to a short term in jail. Therefore, defendant is without interest to raise the questions here urged, as the provisions relative to seizure and sale, and the costs thereof, do not affect him in this case.

It is also urged that sections 4 and 5 of the ordinance are illegal, because they impose certain duties on the sheriff, when the police jury is without authority to impose duties on him; the duties of that official being fixed by the Legislature.

We have seen what duties are required of the sheriff by section 4 of the ordinance. By section 5 he is required to seize stock running at large, in violation of the ordinance, when he is notified of such violation by any resident of the parish, and to give the notices required by section 4, when the resident makes the seizure. For the reasons given why defendant is without interest to urge the preceding question considered, this ground of attack is overruled.

[8] It is also urged that the ordinance is illegal, because it makes unlawful, acts which are perfectly legal, and it is pointed out in this connection that the ordinance provides:

"That it shall be unlawful for any horses * * * to run, roam or be at large, *or* on any of the public highways or commons, or on any land other than that of the owner of said animals within the parish of East Baton Rouge." (Italics ours.)

Defendant argues that under this ordinance to merely be on a public highway or common in charge of a horse, or any other animal mentioned in the ordinance, would constitute a violation of its provisions, and therefore it would be unlawful for one to drive his horse on the highway, or his cattle thereon to market. If effect were given to the word "or," which we have italicized, such likely would be the result, but to give that word effect would lead to absurdities. It is manifest from the context, not only from the excerpt quoted, but from the entire ordinance, although the word is repeated in the same connection, in the use of the same phrases, in the second section of the ordinance, and occurs also in the title, that the word was inadvertently used. To give it effect would be to defeat the clear intention of the police jury, whereas, to treat the word as inadvertently inserted will result in carrying out the obvious intention of that body. Under such circumstances, the ordinance will be interpreted and considered as if the word had been omitted. See, in this connection, State v. Stephens, 150 La. 944, 91 South. 349, and also 36 Cyc. pp. 1126, 1127.

[9, 10] It is next contended that the ordinance is illegal, because it is inconsistent and is conflicting in its terms. This contention is based on the fact that the roving of stock is prohibited by section 1, whereas by section 6 it is provided that after the ordinance becomes effective no fence shall be required in the parish. The conflict suggested in defendant's brief consists in the fact that, while the ordinance provides that after it becomes law, no fence shall be required in the parish, yet, notwithstanding, the effect of the ordinance is to require cattle owners to keep their cattle and stock under fence, as it is utterly impracticable to attempt to keep them from roving otherwise. This objection is wholly without merit. Defendant, however, contends that to require, even indirectly, cattle owners to fence their stock, is to discriminate against them unjustly. This is incorrect. No one has such a right to suffer his stock to rove that the right cannot be taken away from him, either by the state or with the state's authorization, by one of its political subdivisions. The roving of cattle is subject to the police power. The ordinance treats all persons similarly situated alike, without any discrimination whatever.

In reference to the motion in arrest of judgment, defendant states in his brief that it involves a discussion of the points raised in the motion to quash, and therefore he does not discuss them under the motion in arrest. We have, nevertheless, examined the latter motion, but fail to find anything in it that entitles him to relief.

For the reasons assigned, it is ordered, adjudged, and decreed that the judgment appealed from be, and the same is hereby, affirmed.

ROGERS, J., takes no part, not having heard the argument.